RICE *v.* STATE

5194                                401 S. W. 2d 562

Opinion delivered April 18, 1966

[Rehearing denied May 9, 1966.]

*J. B. Milham,* for appellant.

*Bruce Bennett,* Attorney General; *Clyde Calliotte,* Asst. Atty. Gen., for appellee.

ED. F. McFADDIN, Justice. Appellant was convicted in the Municipal Court for violation of the "Arkansas Hot Check Law" (Ark. Stat. Ann. § 67-719 *et seq.* [Repl. 1966),] and appealed to the Circuit Court. There, he waived a jury and was tried by the Court, convicted, and sentenced to four months in the County jail; and from that judgment there is this appeal. The appellant's original and amended motions for new trial present the points hereinafter discussed.

I.

*Sufficiency Of The Evidence.* There was introduced the original check given by appellant to Joe Benson for $20.00, drawn on the Benton State Bank, and dated October 10, 1965. The check bore the Benton State Bank endorsement showing that the check was returned unpaid because of insufficient funds. When the original check was introduced with the said endorsement, the State had made a prima facie case (Ark. Stat. Ann. § 67-722).

To overcome the prima facie case, the appellant testified in his own behalf. His entire testimony in this case is as follows:

"Q. You are the defendant in this case and the same James Robinson and James Rice that testified here before?

"A. Yes, sir.

"Q. Now, on this third check they have here, tell the Court what happened?

"A. Well, it's the same testimony as before, sir. I went back to the lady that was up here and offered to pay the checks off the day I picked up my payroll check at Little Rock and she denied payment of it because the checks were not there.

"Q. She couldn't turn your checks over to you?

"A. That's right.

"Q. That was the first you knew of the checks not being paid?

"A. Yes, sir. It wasn't until the following Saturday after I had already paid some other bills with my check and they called back and said the check was no good.

"Q. Then you was arrested pretty soon after that?

"A. I was arrested the following Monday.

"Q. And, you have been in jail since that time?

"A. Yes, sir. I have.

"MR. MILHAM: I believe that is all.

"MR. McCRAY: No questions.

"WITNESS RICE: If I may, I would like to say something to you in my own defense.

"THE COURT: You better.

"WITNESS RICE: On these checks, the reason I put the money in the bank was because before I have had a bad record of checks that have bounced. This time I have put the money in the bank and I wrote the checks in good faith that payments would be paid off. I think what happened in the other case, I think the amount of money I put in was put in my step-dad's deposit because the money was put in the bank in my name.

"THE COURT: Is your step-father's name James Robinson, too?

"WITNESS RICE: James O. Robinson, yes, sir.

"WITNESS EXCUSED."

It is clear from this testimony that the appellant admitted that this was the third check on which he had been in Court and that the check had not been paid. His defense was that he had deposited money in the bank and it had not been credited to his account. He was not corroborated by anyone; and the burden was on him to overcome the prima facie case. So the evidence is sufficient to support the finding and judgment rendered.

## II.

*Testimony Of The Bank Official.* There were three cases against the appellant on appeal in the Circuit Court, each involving a bad check; and all three cases were tried in the Circuit Court the same day. The present case was the third one tried. When the first case was tried, the bank official testified that when the checks, including the one here, were presented to the bank, appellant's balance was only 66 cents. The bank official was cross examined by the appellant's present counsel; and when the bank official completed his testimony, the following occurred:

"MR. McCRAY: I would like, if you would agree to it Mr. Ford's testimony would be the same in the other two appeals cases. Otherwise he would have to stay here. I covered the period of time that the other checks were drawn in the testimony in this case.

"THE COURT: I will consider the testimony in the other two cases."

On the trial of the present case the appellant's counsel sought to object to the testimony of the bank official. Counsel cannot blow both hot and cold. He had impliedly agreed to such procedure, and cannot trifle with the Court by revoking his implied consent. Furthermore, the State had made a prima facie case, as previously shown, and the appellant's own testimony was an admission that he issued the check, and that it was not paid.

### III.

In one point the appellant raises this novel contention:

"It was error for the Court sitting as a jury to try defendant on three cases in which he was charged with overdrafts, or hot checks, as the Judge would be disqualified to sit as a jury because this would deprive defendant of his constitutional rights because in violation of constitutional rights under Amendments 5, 6 and 14, Constitution of the United States."

The answer to this is perfectly obvious: the appellant did not have to waive a jury trial in Circuit Court. He voluntarily waived it and he permitted the present trial to take place after the two previous trials before the same Judge. There is absolutely no merit to this point.

### IV.

After the trial and conviction the appellant filed an amended motion for new trial in which he alleged that

he had found his two deposit slips in the Benton State Bank, one on September 23rd for $40.00, and one on September 30th for $10.00; and he offered these in evidence to show that he had made deposits in the bank. The Court denied the motion for new trial. Of course, the appellant showed no diligence in failing to produce these deposit slips at the original trial. Furthermore, the fact that the appellant made bank deposits on September 23rd and September 30th did not show that he had any money in the bank on October 10th, when he drew this check, or on October 11th, when it was presented to the bank for payment. When a party goes to trial he should have his defense ready and not attempt to retry his case on motion for new trial.

Finding no error, the judgment is affirmed.

AMSLER, J., not participating.