OPINION OF THE COURT
Jasen, J.
The common issue presented on these appeals is whether the jury in each case had a sufficient evidentiary basis upon which to find, beyond a reasonable doubt, that defendant knowingly possessed a forged instrument.
On July 2,1982, defendant, Willie James Johnson, presented a check in the amount of $254.78 to a cashier employed by Star Market to pay for a $30.06 bill for groceries. The check was made payable to one Ronald Doty, and drawn against an account maintained by Flower City Building Services, Inc. The check was presented with a Star Market customer check cashing card which had been issued to Ronald Doty. At the time the check was presented to the cashier, it bore the signature of “Raymond F. Levitt”, as maker on behalf of Flower City Building Services, Inc., and was indorsed on the reverse side of the check in the name of “Ronald Doty”. In order to receive cash to return to Johnson, the cashier went to the service counter where she handed the check and the check cashing card to the head cashier. The head cashier recognized the check as one for which an “alert” had been received by the store a few days earlier, instructed the cashier to detain defendant, and called the police and the assistant store manager. Defendant indicated to the assistant store manager that the check was his. Defendant *559 repeatedly denied that this conversation with the assistant store manager ever occurred. While the assistant store manager attempted to detain defendant, defendant left the store. The assistant store manager followed defendant out of the store and identified him to the police.
At trial, it was established that the instrument in question was one of a number of blank checks which had been taken from the Flower City corporation during a burglary several years prior to 1982. No person named Raymond F. Levitt had ever worked for the Flower City corporation. Ronald Doty testified that he had not worked at the Flower City corporation, and had no knowledge regarding the check which was made payable to his order. Doty had reported his Star Market customer check cashing card missing prior to defendant’s attempt to pass the check in question. Although Johnson had been positively identified by the cashier and assistant store manager as the individual who attempted to pass the instrument in question, defendant, testifying on his own behalf, advanced a theory of mistaken identity.
The facts in People v Tyler are not in dispute. Defendant, Lillian M. Tyler, was employed by Abraham Enterprises, Inc., from June 1981 to October 8,1981. During this period of employment, Tyler knew and worked with Cecelia A. Martella at Abraham Enterprises. On September 23,1981, Martella became seriously ill. She entered the hospital on September 28, 1981 and was released on October 4,1981. Martella never returned to work at Abraham Enterprises after September 23, 1981. On September 24, 1981, Abraham Enterprises issued a payroll check to the order of Cecelia A. Martella in the amount of $163.77. The payroll check was placed in the company safe in accordance with general practice. Tyler had access to this safe, which remained unlocked during working hours. Martella never received the payroll check dated September 24, 1981, although another check from the safe was delivered to Martella by the company through Martella’s daughter.
On October 3,1981, Tyler entered the Quality Liquor Store in Rochester. Tyler approached the service counter and refused the assistance offered by store clerk Dina Balzani, preferring to await the assistance of Frances Leva who was unavailable at that time. Balzani testified that she knew Tyler, as Tyler had previously passed checks with insufficient funds. Tyler cashed the payroll check made payable to, Martella by handing the check to Frances Leva. The check, when presented to Leva, had already been signed in the name of “Cecelia A. Martella” and *560 bore the handwritten telephone number of Abraham Enterprises. A pint bottle of vodka was purchased with the check and defendant received the change. Defendant did not testify at trial.
Lillian Tyler was convicted, in Monroe County Court, of criminal possession of a forged instrument in the second degree. (Penal Law § 170.25.)* The Appellate Division, Fourth Department, relying solely upon People v Green (53 NY2d 651), reversed the judgment of Monroe County Court, and dismissed the indictment. Willie James Johnson was convicted in Monroe County Court of criminal possession of a forged instrument in the second degree (Penal Law § 170.25), as well as attempted grand larceny, criminal possession of stolen property and criminal impersonation. The Appellate Division, Fourth Department, also in sole reliance upon People v Green (supra), reversed the judgment of Monroe County Court insofar as it convicted defendant of criminal possession of a forged instrument in the second degree, dismissed that count of the indictment, and otherwise affirmed the judgment. Leave to appeal in each case was granted by a judge of this court. For the reasons that follow, we now reverse in each case.
An essential element of the offense of criminal possession of a forged instrument is knowledge by the defendant that the instrument is forged. (Penal Law § 170.25; People v Everhardt, 104 NY 591, 595 [Earl, J.]; People v Colmey, 116 App Div 516, 517; People v Ghiggeri, 138 App Div 807; United States v Carll, 105 US 611, 613.) Some courts, presuming a rational relationship between the fact proved — possession — and the fact presumed — knowledge of forgery — hold that the mere unexplained possession or negotiation of a forged instrument is itself a circumstance from which knowledge of its falsity may be presumed. (See, Hagar v State, 71 Ga 164; White v Territory, 1 Wash 279, 24 P 447; McGhee v State, 183 Tenn 20, 189 SW2d 826; Tarwater v State, 209 Ark 687, 192 SW2d 133; Hatton v Commonwealth, 294 Ky 740, 172 SW2d 564; State v Maxwell, 151 Kan 951, 102 P2d 109; State v Phillips, 127 Mont 381, 264 P2d 1009; see, Bailey & Rothblatt, Defending Business and White *561 Collar Crimes § 29.26 [2d ed].) This court, following legislative intent (Penal Law §§ 15.15, 170.25), has implicitly rejected the rebuttable presumption approach toward establishing defendant’s knowledge of forgery. (People v Green, 53 NY2d 651, supra; but see, People v Rathbun, 21 Wend 509, 518.) The mere negotiation or utterance of a forged instrument cannot, of itself, establish a presumption that defendant had knowledge of the forged nature of the instrument. (See, State v Waterbury, 133 Iowa 135, 110 NW 328; State v Runnion, 122 W Va 134, 7 SE2d 648.) Had the Legislature intended to presume knowledge of forgery upon a showing of mere possession of a forged instrument under Penal Law § 170.25, it would have so provided. (See, e.g., Penal Law §§ 170.71, 165.55 [2].)
Our decision in People v Green (53 NY2d 651, supra) underscores the legislative determination that knowledge of the forged nature of the instrument will not be imputed to a person solely by reason of possession or presentation of said instrument. In Green, we held that there was insufficient proof, as a matter of law, to sustain the conviction of defendant for criminal possession of a forged instrument. This determination reflects the view that where there is absolutely no evidentiary showing of how or where the instrument came into defendant’s possession, and there exists a stipulation that the indorsement was not in defendant’s handwriting, any finding that defendant knew that the instrument was forged could have been premised on no more than speculation. (People v Green, supra, at p 652.) Green is not dispositive of the cases on appeal, but merely presents one set of circumstances which will not, as a matter of law, permit a finding that defendant had guilty knowledge of forgery.
Guilty knowledge of forgery may be shown circumstantially by conduct and events. (People v Von Werne, 41 NY2d 584, 590.) The “moral certainty test”, utilized where proof of the entire case depends upon circumstantial evidence (see, People v Benzinger, 36 NY2d 29, 32), has no application where the circumstantial evidence relates to only one element of the offense (People v Von Werne, supra, citing People v Sabella, 35 NY2d 158, 168; People v Bonifacio, 190 NY 150; see also, People v Barnes, 50 NY2d 375, 380). The only question now before this court is whether defendant in each case had knowledge of the forged nature of the possessed instrument. Thus, this court, viewing the totality of the evidence in a manner most favorable toward the People, must determine whether the jury in each case had a sufficient evidentiary basis upon which to find defendant’s knowledge of the forged character of the possessed instrument beyond a reasonable doubt.
*562 It is well established that recent and exclusive possession of the fruits of a crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal. (People v Galbo, 218 NY 283, 290.) As this court recently explained in People v Baskerville (60 NY2d 374, 382-383), if a defendant is found in exclusive possession soon after the crime and there is no evidence that he may have received the contraband from an accomplice, or possession is unexplained or falsely explained, the inference may be drawn that defendant had knowledge that the possessed property was stolen. (See also, People v Batten, 31 NY2d 737, affg 40 AD2d 549, 550.) However, while the possession of the forged instrument fixes the identity of the offender, there remains the question of the nature of his or her offenses. (People v Galbo, supra, at p 290.) The lesson of Galbo and Baskerville is that where varying, yet consistent, inferences of guilt may be drawn from circumstantial evidence, the jury must have some factual basis upon which to determine which guilty inference is the true one. As Judge Cardozo aptly noted in People v Galbo (supra, at p 294), “[sjmall things may turn the scale. But something there must be.” In each of the cases before us today, the jury verdict of guilt as to possession of a forged instrument was supported by an adequate factual basis.
In Tyler, the jury could find, beyond a reasonable doubt, that defendant had knowledge that the instrument in her possession was forged. We have previously recognized that proof of “how or where” the instrument came into defendant’s possession is probative on the issue of defendant’s knowledge of forgery. (People v Green, 53 NY2d 651, 652, supra; People v Galbo, supra, at p 294.) Here, the evidence adduced at trial indicates that defendant had unrestricted access to the company safe in which Martella’s payroll check was held. All payroll checks were generally held in the company’s safe, and in fact, Martella’s unindorsed check was so held. Martella never received this check. Defendant’s unexplained and exclusive possession of the fraudulently indorsed check shortly after this particular check had been stolen (People v Baskerville, supra) and unrestricted access to the unindorsed check before Martella could receive it (United States v DeJohn, 638 F2d 1048, 1054; Cotton v United States, 409 F2d 1049, cert denied 396 US 1016) constitute factors upon which a jury could find “how or where” defendant came into possession of the forged instrument.
The foregoing chain of evidence is strengthened by the fact that Martella never had the opportunity to personally indorse the check. Martella’s payroll check was issued to her September 24, 1981, one day after she had permanently left Abraham *563 Enterprises for reason of serious illness. The check was held in the company safe, to which defendant had unrestricted access, and never received by Martella. Martella was hospitalized from September 28 to October 4. Defendant and Martella were coworkers at Abraham Enterprises. Where a person has unrestricted access to an unindorsed check, and shortly after issuance of the check has exclusive possession of the now forged check, while concomitantly aware of the intended payee’s inability to personally indorse the instrument, the jury is entitled to find that defendant had knowledge of the forged nature of the instrument in her possession. (See, United States v Cowden, 545 F2d 257, 263-264.) In stark contrast to Green, the jury in Tyler was presented with an evidentiary basis to find that defendant had control of the instrument, and that defendant had knowledge of the intended payee’s lack of opportunity or ability to personally indorse the check. Defendant’s guilty knowledge may be inferred from such factors.
In Johnson, there was a sufficient basis upon which to find, beyond a reasonable doubt, that defendant had knowledge of the forged nature of the instrument in his possession. In response to an inquiry from the store manager, Johnson made an affirmative claim of ownership of the instrument. Upon presentment of the Star Market check cashing card with the forged check, Johnson affirmatively identified himself as the payee in order to secure negotiation and concomitantly made a representation as to the genuineness of the indorsement. Defendant falsely denied making such affirmations. Moreover, the check cashing card and the check both contained signatures which the jury could compare and from their dissimilarity impute guilty knowledge to defendant. These factors, considered with exclusive possession of the forged instrument, have been held sufficient to give rise to the inference of defendant’s knowledge of forgery. (United States v Evans, 436 F2d 1305.) Unlike Green, we are here presented with a sound evidentiary basis which, viewed in its totality, permits a finding of defendant’s knowledge of forgery.
Accordingly, the order of the Appellate Division in each case should be reversed, and each case remitted to the Appellate Division for consideration of the facts.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
In each case: Order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the opinion herein.

 “170.25 Criminal possession of a forged instrument in the second degree.
“A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10.
“Criminal possession of a forged instrument in the second degree is a class D felony.”