ROGER GAIL SMITH AND DON CALVIN SMITH
*v.* STATE OF ARKANSAS

5793                                              494 S.W. 2d 489

Opinion delivered May 21, 1973

*Donald Leigh McLaughlin* and *Lady, Webb & Johnson,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *James W. Atkins* and *Gene O'Daniel,* Assts. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellants were convicted by a jury of burglary and grand larceny. Through their present court appointed counsel, appellants persuasively argue for reversal of the judgments that the state failed to prove the voluntariness of their confessions and did not overcome the legal presumption that the confessions were involuntary because the state failed to call material witnesses

or explain their absence. We must agree with this contention which is one of first impression in our state.

In *Mitchell* v. *Bishop, Supt.,* 248 Ark. 427, 452 S.W. 2d 340 (1970), we said:

> "Of course, under our own case law, there is a presumption that an in-custody confession is involuntary and the burden is on the state to show the statement to have been voluntary, i.e., freely and understandably made without hope of reward or fear of punishment. In determining whether a confession is voluntary, the court must look to the whole situation and surroundings of the accused."

In the case at bar appellants contested the introduction into evidence of their alleged confessions by a motion to suppress. Accordingly, a Denno hearing was held in chambers to determine the issue of voluntariness which resulted in the court's finding, by a preponderance of the evidence, that the confessions were freely given as is required by Ark. Stat. Ann. § 43-2105 (1964 Repl.). The state offered only one witness, Kenneth McFerran, an arresting officer, to meet its burden of showing the confessions were voluntary. During appellants' interrogation, there were, also, present Trooper Snider and a stenographer, who reduced appellants' oral statements to typewritten forms. McFerran testified that he arrested appellants about 10 a.m., placed them in custody of other officers and didn't see appellants again until he returned about 10 p.m. to question them. Appellants were properly advised of their constitutional rights and signed waivers. According to McFerran, he did all of the questioning and used no force, threats, beatings, coercion, nor any promise of leniency or reward to induce appellants to make their oral confessions or to sign their typed statements the next day. McFerran did not know whether appellants were questioned by Snider during the approximate 11 hour interim between their arrest and their interrogation that night.

Both appellants agree that they were given the Miranda warnings, knew their rights, signed waivers and the typewritten statements. However, both appellants contra-

dicted parts of McFerran's testimony. According to them, Snider questioned them during the time they were in custody and before McFerran returned that night. Also, Snider alone did all the questioning that night. Appellants testified that Snider physically abused and threatened them before conducting the interrogation that night. One testified that preceding the interrogation Snider slapped him, stuck a cocked pistol in his face and, also, said "I can help you." The other appellant said Snider threatened him with a pistol and that another officer kicked him. Because of this treatment, appellants say they orally confessed their guilt and signed their controverted confessions.

After appellants testified, McFerran was recalled and reiterated that he did the actual questioning of each appellant; appellants made their statements to him only; and, although Snider was present, he didn't ask any of the questions nor offer any leniency or coercion. Also, appellants didn't complain to him nor have the appearance of having been abused, mistreated, threatened or coerced by Snider or anyone else. Again, he acknowledged that he didn't see appellants after they were placed in jail around 11 a.m. until 10 p.m. and was unaware of what happened to appellants during this 11 hour period.

The state didn't call the stenographer to testify even though she was present during appellants' interrogation, took appellants' statements down in shorthand, and reduced the statements to typewritten form. No explanation was made for her absence when it appears that she is a secretary for the local police department. Snider was not called to contradict appellants' allegations although it appears he was working out of a nearby town on the trial date. His absence was, also, unexplained. Thus, appellants' testimony as to Snider's coercion and promises of leniency was not challenged by Snider himself. McFerran admitted that he had no knowledge of what happened to appellants after they were placed in jail and before he conducted his interrogation.

Recently we found error in a trial court's ruling that a confession was voluntary where the appellant's testimony was uncontradicted by an official who appellant

said agreed to "try to help me" in exchange for his statement. *Shelton* v. *State,* 251 Ark. 890, 475 S.W. 2d 538 (1972). There we again recognized that a confession of guilt cannot be tainted by any official inducement which results from promises of reward, coercion or fear. Of course, this is true even if the Miranda warnings are given. In the case at bar, as indicated, appellants' testimony of Snider's coercion and promise of assistance is uncontradicted by Snider. McFerran only testified that he himself had no knowledge of threats or promises of leniency. He could not rule out these possibilities. In these circumstances we must agree with appellants that the state did not meet its burden of overcoming the presumption that the alleged confessions were involuntary.

This is in accord with other states where this issue, now before us, was presented. They have adopted a reasonable and practical approach in determining the voluntariness of a confession. They hold that all material witnesses must be called or their absence satisfactorily explained in order for the state to meet its burden of proving that a confession was voluntarily given. In *Mercer* v. *State,* 206 A. 2d 797 (Md. 1965), the appellant's conviction was reversed because his testimony that he was physically mistreated by two detectives was uncontradicted by either of the persons accused of the mistreatment. However, in *Gill* v. *State,* 289 A. 2d 575 (Md. 1972), that court held that it is not required that "each person who had casual contact with the accused, once he was in police custody or being interrogated, must testify to the voluntariness of the confession in order for the prosecution to satisfy its burden. But when it is contended that someone employed coercive tactics to obtain inculpatory statements, the charge must be rebutted." In *People* v. *Armstrong,* 282 N. E. 2d 712 (Ill. 1972), the appellant was properly advised of his constitutional rights before making a statement. A motion to suppress was sought and refused. The state failed to produce all witnesses material to the making of the statement or explain their absence. It was held that appellant's statements should have been suppressed. From that opinion:

" 'The burden of proving that a confession is voluntary is one which the State must assume when the

admissibility of a confession is questioned on the grounds that it was coerced. Only by producing all material witnesses connected with the controverted confession can the State discharge this burden.' "

See, also, *Stevens* v. *State*, 228 So. 2d 888 (Miss. 1969).

We hold that whenever the accused offers testimony that his confession was induced by violence, threats, coercion, or offers of reward then the burden is upon the state to produce all material witnesses who were connected with the controverted confession or give adequate explanation for their absence.

Appellants, further, contend the court erred in permitting the prosecuting attorney to refer to other crimes in questioning a state witness and make prejudicial statements during his closing arguments. Even though we should agree with this assertion, we need not discuss it since it is not likely to happen again on retrial. Neither do we deem it necessary to discuss appellants' assertion there was insufficient evidence to support the verdict since they do not favor us with any argument to support this contention.

Reversed and remanded.

FOGLEMAN, J., not participating.