Anderson Gene DuBOIS *v*. STATE of Arkansas

CR 74-163                                          527 S.W. 2d 595

Opinion delivered July 7, 1975
[Rehearing denied September 2, 1975.]

*Elton A. Rieves III*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Alston Jennings Jr.*, Asst. Atty. Gen., for appellee.

DON M. SCHNIPPER, Special Justice. Appellant, Anderson Gene DuBois, was charged with the offense of murder in the first degree for the shooting and killing of Mack Crawford Howell during the early hours of June 14, 1971 in West Memphis, Arkansas. Appellant was first tried and convicted of this charge in March, 1972 and sentenced to life imprisonment. On appeal to this Court that conviction was reversed and remanded for a new trial. See *DuBois* v. *State*, 254 Ark. 543, 494 S.W. 2d 700 (1973). Appellant was tried for the same offense in April, 1974 and was again convicted and sentenced to life imprisonment. It is from the second conviction and sentence that Appellant brings this appeal.

The facts of this particular criminal act have been reviewed and outlined by this Court on several previous occasions and an additional review would add nothing to this opinion. See *DuBois* v. *State*, Supra., and *Austin* v. *State*, 254 Ark. 496, 494 S.W. 2d 472 (1973). For this reason only the facts necessary for a review of Appellant's contentions on appeal will be mentioned.

Appellant first contends that the trial court erred in accepting twenty-two affidavits offered into evidence by the State without requiring the State to produce its affiants for an opportunity of cross-examination as to their credibility.

Appellant complied with provisions of Ark. Stat. Ann. Sec. 43-1602 and filed his Motion for Change of Venue contending Appellant could not get a fair trial in Crittenden County, Arkansas. With the Motion were two affidavits of persons meeting the statutory requirements stating that the minds of Crittenden County inhabitants were prejudiced against Appellant and would presume him guilty because of newspaper articles, pictures and television coverage.

Appellant presented numerous newspaper articles and also put his two witnesses on the stand. The State countered Appellant's position by presenting the affidavits of twenty-two (22) persons who also met the statutory qualifications but none of these persons were called on for testimony in open court. Appellant objected to the introduction of the State's affidavits on the grounds that such procedure denied Appellant the right to cross-examine the affiants as to their credibility.

The cited statute makes no requirement that the necessary affiants be presented before the Court for oral examination, even though such is permissible.

It is a well established principle in this State that the burden is on the movant in a change of venue proceeding to make credible proof in support of the motion. *Maxwell* v. *State*, 236 Ark. 694, 370 S.W. 2d 113. Furthermore, a motion for a change of venue is addressed to the sound discretion of the trial court (*Bailey* v. *State*, 204 Ark. 376, 163 S.W. 2d 141)

and unless the trial court has abused its discretion in overruling a motion for a change of venue, the order is conclusive on appeal. *Bryant v. State,* 95 Ark. 239, 129 S.W. 295; *Ford v. State,* 98 Ark. 139, 135 S.W. 821; *Adams v. State,* 179 Ark. 1047, 20 S.W. 2d 130; *Stout v. State,* 247 Ark. 948, 448 S.W. 2d 636. There is a presumption that the persons who make affidavits in support of such a motion are credible until the contrary is shown. *Surgeon v. State,* 160 Ark. 112 (1923). It is also well established that after the required affidavits are submitted the only question for the determination of the Court is whether or not the affiants are credible persons. *Surgeon v. State, Supra.*

This Court does not deny that Appellant may well have met his statutory burden of proof on the change of venue issue. However, it is also clear that the State countered with a considerable number of affidavits and met Appellant's proof in a very convincing manner. Considering this Court's review authority and the latitude of discretion of the trial court, we do not feel it was essential that the trial court require the State to produce its affiants in person. We do, however, recognize the trial court's authority to make this requirement if it feels such testimony is necessary and it has any doubt as to the credibility of the State's affiants. Accordingly, we find no error by the trial court in this regard.

We are also inclined to comment on the newspaper articles submitted into evidence in support of Appellant's motion. From this evidence it appears there were a number of articles referring to the beginning of the first trial and during those proceedings. These all appeared between February 29, 1972 and March 4, 1972, some two years before the second trial. Appellant's other articles introduced into evidence were published in September, 1972 during the Jerry Austin trial with short references to Appellant, these being about one and one-half years before the second trial. The most recent news release introduced was dated May 21, 1973, almost one year after the first trial and eleven months before the second trial, and referred to the reversal of the Appellant's first conviction, a matter we hardly feel would be prejudicial to Appellant.

Considering the publication dates of all the articles, we

feel they were of little support to Appellant's position due to their remoteness in time to the second trial. See *Walker* v. *Bishop*, 408 P. 2d 1378.

For these reasons we do not feel the trial court abused its discretion in overruling Appellant's Motion for a Change of Venue or in failing to require the State to produce its twenty-two affiants for open court testimony and cross-examination.

Appellant next contends that the trial court erred in refusing to quash Appellant's oral and written statements given while in the custody of the West Memphis Police Department. Specifically, Appellant claims such statements were made involuntarily.

It is undisputed that Appellant was arrested about 3:00 or 3:30 p.m. in Savannah, Tennessee on June 27, 1971, held in the county jail until West Memphis officers arrived there at 9:30 or 10:00 p.m., was transported to West Memphis, Arkansas, and arrived there about 12:00 or 12:15 a.m., June 28, 1971; after being advised of his constitutional rights from a Miranda form, gave a six page written statement between 12:24 a.m. and 4:00 a.m.; was allowed to sleep and eat breakfast; was again advised of his constitutional rights and again executed a waiver; gave an oral statement which was tape recorded about 10:00 a.m. These facts are established by the testimony of Appellant, two of the interrogating officers and the transcribed testimony of a third officer taken at the hearing before the first trial.

While we refer to the Appellant's confession, in truth the Appellant confessed to nothing more than having traveled to West Memphis, Arkansas with Jerry and Linda Austin and G. W. Stewart; being with these people at the Austin house during the early hours of June 14, 1971; being in the front right-hand seat of an automobile driven by G. W. Stewart when Jerry Austin brought Mack Howell to the car and witnessing Jerry Austin shoot Mack Howell. In other words, this was not a confession of guilt, but an exculpatory statement on Appellant's part.

For purpose of this appeal, however, these statements

must be treated as confessions in accordance with *Miranda* v. *Arizona*, 384 US 436, 16 Led 2d 694, 86 S. Ct. 1602, 10 ALR 3d 974.

Appellant moved that the statements be quashed and not allowed into evidence at the second trial and a Denno hearing was held by the trial court outside the presence of the jury and prior to the trial, in accordance with Ark. Stat. Ann. Sec. 43-2103. At the completion of this hearing the trial court ruled the statements to have been voluntarily made and allowed them to be presented to the jury by the State.

Since the landmark *Miranda* case, this Court has on many occasions been called upon to judge various circumstances and factors involved in the taking or giving of confessions or incriminating statements. As a result of these occasions a number of factors upon which to base this finding have been enunciated. While not necessarily all inclusive, the following is a listing of factors to be considered by the trial court in making this determination:

1. Age and intellectual strength or weakness of the Defendant;

2. Manner in which he is questioned;

3. Presence or absence of threats of harm, fear of punishment, inducements or hopes of reward;

4. Delay between advice of rights and giving of confession.

It is against these factors that we have examined the written and oral statements of this Appellant.

Appellant was 26 years old at the time of the 1974 trial and had completed 9 years of school and received a general education development diploma while in military service. While Appellant contends he had been drinking prior to his arrest the testimony of himself and officers of the West Memphis Police Department seem to make it clear that the handwritten statement was not taken until some nine hours

after his arrest and transfer from Savannah, Tennessee to West Memphis, Arkansas and the oral statement some ten hours after this arrest. These extended time periods and an examination of Appellant's handwriting and responses to questions lead us only to conclude that he was not under such an influence of intoxicants so as to render either or both statements involuntary. All testimony, including that of Appellant, indicates the West Memphis Police Department officers read the Miranda rights form to Appellant before each statement and, therefore, there was no delay between the advice and the giving of each statement. On these points, we see nothing to indicate anything other than that the statements were voluntarily, intelligently, freely and intentionally given.

One of Appellant's main contentions for reversal is that he was "cajoled" into making the statements placing him at the scene of the crime by one of the interrogating officers, Capt. Gaia, telling him that the only way he could clear himself would be to give a statement. This statement was contradicted. Furthermore, Appellant in the instant case acknowledged that he had been informed of the charge of first degree murder, had been informed of the Miranda rights, and we feel certain his statement was made with his own hope of exoneration and to place the commission of the criminal act on another person, rather than because of any inducement or hope of reward.

The remaining contention of Appellant to refute the State's position of the voluntariness of the confessions is that while Appellant was told he was charged with first degree murder he was not told that even if he was not guilty of that criminal act he could well be guilty of being an accessory before the fact and could, under certain circumstances, be held and punished as the principal. Apparently it is Appellant's contention that a suspect must be charged with and have explained to him all crimes for which he could be charged with or tried for, including all lesser offenses.

In the instant case it is undisputed that Appellant was told in Savannah, Tennessee and in West Memphis, Arkansas, upon his return, the exact nature of the charge against

him, i.e., first degree murder. While Appellant was not told he could be tried for first degree murder as an accomplice, he did give an exculpatory statement which simply placed him at the scene of the occurrence and, if believed, might well have cleared him of all prior knowledge, intent, malice, as well as all other necessary elements even as an accomplice.

The facts remains that Appellant was informed of the charge against him and was tried for that particular charge, not as an accomplice, but as the principal. Accordingly, we can see no error in this regard.

In summary, we find no error or abuse of discretion on the part of the trial court in finding the statements to have been voluntary on the part of Appellant and, therefore, admissible into evidence.

At the hearing held prior to the second trial to determine the voluntariness of Appellant's statements one of the interrogating West Memphis, Arkansas police officers did not appear but his testimony at the hearing on the same issue held prior to the first trial was presented to the Court and considered by the Court in determining the voluntariness question. Two of the police officers present at the interrogation did appear in person.

Appellant now contends that the testimony of Captain Raymond Gaia should not have been allowed into evidence as Captain Gaia was a material witness, was not present for the second hearing and no adequate explanation was given by the State for his absence. Therefore, under the Appellant's theory, the State did not meet its burden of proof as to the voluntariness of the statements of Appellant when it did not produce all material witnesses connected with the controverted statement.

Appellant has cited this Court to a number of recent decisions to the effect that it is necessary in determining the voluntariness of a confession that all material witnesses be presented or an adequate explanation of their absence be given. *Smith* v. *State*, 254 Ark. 536, 494 S.W. 2d 489; *Northern* v. *State*, 257 Ark. 549 (1975); *Russey & Way* v. *State*, 257 Ark. 570

(1975). This Court acknowledges and reaffirms the holdings of the cited cases but feels there is adequate distinction between the situations in the cited cases and the situation in the instant case.

By way of brief history, following the 1964 U. S. Supreme Court decision in *Jackson* v. *Denno*, 378 U.S. 368, 12 L. ed. 2d 908, 84 S. Ct. 1774, 1 ALR 3d 1205, the Arkansas Legislature adopted Act 489 of 1965 (Ark. Stat. Ann. Sec. 43-2105) (Supp. 1973) to govern the hearing and determining authority on the issue of voluntariness of a confession. The adherence to the statutory procedure has been approved by this Court on numerous occasions. (See *Walker* v. *State,* 253 Ark. 676, 488 S.W. 2d 40 (1972)). Through various cases decided since the enactment of this statute, this Court has firmly established that the determination of the voluntariness of a confession must be made by the Trial Judge outside of the presence of the jury and the only jury determination in this regard would be the credibility of the statement and weight to be given same.

It, therefore, follows that any objection to the production of evidence on the voluntariness issue must be made at the hearing conducted by the Trial Judge (commonly referred to as a Denno hearing). No such objection was made by Appellant at the Denno hearing in the instant case. In fact, the lack of such objection was noted by counsel for Appellant during the trial, outside of the jury's presence and immediately prior to the presentation of Appellant's statemens to the jury.

Accordingly, this Court cannot on appeal consider Appellant's objection to the use of Captain Gaia's testimony taken during the Denno hearing prior to the first trial and used at the hearing prior to the second trial.

Appellant next contends that the trial court erred when it refused his instruction that Linda Austin Shaw was an accomplice as a matter of law. If such was the case Appellant could not be convicted upon her testimony unless such was corroborated by other evidence tending to connect Appellant to the commission of the crime.

Appellant relies heavily upon the decision of this Court in the first appeal of this Appellant, *DuBois v. State*, 254 Ark. 543. In that opinion this Court did make the following finding:

> "Applying these tests to the record in this case, this Court is of the opinion that Linda Austin, at least was an accessory within the meaning of Section 43-2116."

However, the reason for the reversal by this Court on the first appeal was, in the final result, a finding of insufficient evidence connecting Appellant with the killing of Mack Howell without the testimony of Linda Shaw Austin and G. W. Stewart.

> "The only evidence placing DuBois in the State of Arkansas at the time of Mack Howell's killing comes from the testimony of Linda Austin (now Shaw) and G. W. Stewart." *DuBois v. State*, Supra.

It was not the finding nor intention of this Court to require such an instruction as requested by Appellant upon the second trial as such could only be determined by the testimony at the second trial.

Appellant's requested Instruction No. 3 on second trial was as follows:

> "You are instructed that Linda Austin is, as a matter of law, an accomplice."

Rather than giving this Instruction, the trial court allowed the jury to make this determination with the following instruction:

> "It is for you to determine from all the facts and circumstances in this case whether or not Linda Shaw (formerly Austin) or G. W. Stewart, or both of them, were accomplices within the meaning of the law as just given to you."

The trial court preceded and followed the above quoted

language with a proper statement of the law of this State concerning the definition of an accomplice, and the weight,to be given such testimony and the requirement of corroboration. Ark. Stat. Ann. Sec. 43-2116 (Repl. 1964).

Appellant's contention has been presented to this Court on prior occasions and we have answered same in the following language:

> "Appellant's main objection to this instruction is that he says the instruction should have told the jury that Stanley Robinson was an accomplice and not leave that issue to the jury. This is not the law and there was no reversible error, if it were, in fact, submitted to the jury." *Rice* v. *State*, 241 Ark. 570, 408 S.W. 2d 902 (1966).

> See also *Hummel* v. *State*, 210 Ark. 471, 196 S.W. 2d 594 (1946). *Boyd* v. *State*, 215 Ark. 156, 219 S.W. 2d 623 (1949).

This Court reviewed the accomplice issue insofar as G. W. Stewart is concerned in the appeal of Jerry Austin and reaffirms the holdings there. *Austin* v. *State*, 254 Ark. 496, 494 S.W. 2d 472 (1973). Accordingly, we feel the question of whether or not G. W. Stewart was an accomplice was properly submitted to the jury for determination.

At the second trial of Appellant Linda Austin Shaw also testified she knew nothing about the plan to kill Mack Howell and was fearful of her husband and Appellant. At the same time there was considerable evidence tending to contradict her knowledge, participation and fear. All things considered, this Court has concluded that the evidence raised a fact question and was properly submitted to the jury for resolution. For these reasons we find no reversible error by the trial court in refusing Appellant's requested instruction.

Appellant finally insists there was not sufficient corroborating evidence to convict him of the crime for which he was charged and that the jury's verdict was not supported by the evidence. In making the contention Appellant has made

two assumptions: first, that Linda Austin Shaw and G. W. Stewart were accomplices as a matter of law, and second, that the exculpatory statements of Appellant were involuntary and inadmissible. From our findings set out herein, both of these assumptions are erroneous.

While Appellant's statements were exculpatory rather than incriminating as to the shooting of Mack Howell, they did place Appellant at the scene of the crime and allowed the jury to judge the credibility of such.

We think all the evidence was sufficient to convict Appellant regardless of the jury's finding that Linda Austin Shaw and G. W. Stewart were or were not accomplices. In other words, even if they were accomplices, there was sufficient corroboration of their testimony connecting Appellant with the offense to sustain the verdict.

We find no reversible error on this contention of Appellant.

Affirmed.

BYRD, J., concurs.

FOGLEMAN, J., not participating.